UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN MICHIGAN

BRITTNEY ALEXANDER,

      Plaintiff,

                                 Case No.  2:25-cv-10527

v.

                                 Hon.

COREWELL HEALTH, INC.

      Defendant.

Batey Law Firm, PLLC
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI 48025
(248) 540-6800-telephone
(248) 940-5848-fax
sbatey@bateylaw.com

## **PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND**

NOW COMES, Plaintiff, Brittney Alexander by and through her attorneys Scott P. Batey and the Batey Law Firm, PLLC, and for her Amended Complaint against Defendant states as follows:

1.     Plaintiff, Brittney Alexander, is a resident of the City of Sterling Heights, County of Macomb, and State of Michigan.

2.     Defendant, Corewell Health (hereinafter "Corewell") is a domestic nonprofit corporation duly authorized to conduct business throughout the

southeastern district of Michigan, and whose principal place of business in located at 3601 W 13 Mile Rd, Royal Oak, MI 480733. The events producing the original injury occurred in Oakland County, Michigan.

7. Jurisdiction and venue are proper in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391(b) & (c).

8. Plaintiff brings this action for damages stemming from the acts and/or omissions of Defendants constituting harassment, discrimination, adverse employment action and wrongful termination which resulted in emotional and economic damages to the Plaintiff in violation of the Family and Medical Leave Act ("FMLA"), 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964 and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq.*.

9. The amount in controversy exceeds $75,000.00 and is otherwise within the Jurisdiction of this Court.

## **GENERAL ALLEGATIONS**

10. Plaintiff incorporates by reference paragraphs 1 through 9 of the Complaint as though fully set forth herein.

11. Plaintiff, Brittney Alexander is an African-American female who began her employment with Defendant in 2019 and was most recently employed as a Medical Assistant in the Pediatric Urology Department in Royal Oak.

2

12. In January, 2024 Plaintiff came under the supervision of an Interim Manager, Lisa Coleman.

13. Plaintiff was the only Medical Assistant in the department.

14. Prior to coming under the supervision of Ms. Coleman Plaintiff had no written disciplinary actions or write-ups.

15. At all relevant times Plaintiff was an exemplar employee.

16. Shortly after Ms. Coleman started as Interim Manager she began calling Plaintiff "my favorite Brittney" which made Plaintiff uncomfortable.

17. Plaintiff was concerned co-workers might think she was getting more favorable treatment if Ms. Coleman continued to call her "my favorite Brittney."

18. Plaintiff complained that Ms. Coleman's comments were making her feel uncomfortable

19. After Plaintiff complained about Ms. Coleman calling her "my favorite Brittney" Ms. Coleman's demeanor changed and she became more hostile and rude to Plaintiff.

20. Ms. Coleman stopped calling her "my favorite Brittney" and began focusing on Plaintiff's race and overly scrutinizing Plaintiff's work and creating fault and performance issues where none existed.

21. On February 23, 2024 Ms. Coleman issued Plaintiff an unwarranted coaching "warning."

22. This was the first issue regarding her work that Plaintiff had ever receives and she had just received a great Performance Review from her prior supervisor in December, 2023.

23. Plaintiff was also the recipient of the Eagle Eye Award before Ms. Coleman began as her supervisor.

24. Ms. Coleman focused on Plaintiff's race and made comments about Plaintiff's hair asking "what's up with your hair" while continuing to focus on Plaintiff's race.

25. Ms. Coleman would also constantly talk about race and how her son only dated African-American women.

26. In March, 2024 Plaintiff complained to HR that Ms. Coleman was creating a hostile work environment due to her race.

27. On March 12, 2024 Defendant dismissed Plaintiff's complaint of racial discrimination and harassment because Ms. Coleman "apologized."

28. Ms. Coleman's apology was hollow and Defendant dismissing Plaintiff's complaint put a target on Plaintiff's back and empowered Ms. Coleman to go on a campaign to terminate Plaintiff.

29. On April 11, 2024 Plaintiff received her first written disciplinary action regarding performance issues which were done in retaliation for Plaintiff's complaints of racial discrimination and harassment.

4

30. Plaintiff's performance continued to be excellent and Defendant fabricated performance issues to justify adverse employment actions they were planning on taking against Plaintiff.

31. During this time Ms. Coleman was training her replacement Kelly Calucci and intentionally caused Ms. Calucci not to like or trust Plaintiff and she overly scrutinized and nit-picked Plaintiff's work.

32. On June 4, 2024 Defendant, skipped over a second written disciplinary notice, placed Plaintiff on a Final Written Warning over fabricated performance issues created by Defendant due to Plaintiff's race and complaints of racial discrimination and harassment.

33. As a result of the racial discrimination, harassment and retaliation Plaintiff was placed on medical leave due to the stress and anxiety Defendant's caused and on July 15, 2024 began using leave under the Family Medical Leave Act ("FMLA").

34. While out on FMLA leave, Plaintiff learned from co-workers that Defendant was frustrated she used FMLA leave and they did not have anyone to do Plaintiff's job.

35. At all times relevant, Plaintiff was advised by Defendants, that his medical leaves were approved and protected.

36. All of Plaintiff's medical leaves were protected by the FMLA.

37. Plaintiff was on FMLA leave from July 15, 2024 until October 14, 2024.

38. On October 28, 2024, only two weeks after returning from FMLA leave, Defendant terminated Plaintiff for her use of FMLA leave and complaints of racial discrimination.

39. During the time period in question, Defendants, Corewell Health was Plaintiff's employer and Plaintiff was its employee within the meaning of the FMLA.

40. Defendants' actions were intentional, or were carried out with reckless indifference to Plaintiff's rights and sensibilities.

## COUNT I
## VIOLATION OF THE FMLA

41. Plaintiff incorporates by reference paragraphs 1 through 40 of the Complaint as though fully set forth herein.

42. Corewell Health was Plaintiff's "employer" within the meaning of the FMLA.

43. Plaintiff requested and was approved for medical leave which was protected under FMLA and which were approved by the Employer.

44. Defendant violated the FMLA by harassing, discriminating against, and/or retaliating, including termination against the Plaintiff in significant part because she exercised rights under the FMLA, by terminating Plaintiff.

6

45. As a direct and proximate result, Plaintiff has sustained damages including, but not limited to loss of income and attorney fees.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendants in an amount in excess of $75,000.00, plus exemplary damages, together with costs, interest, attorney fees and punitive/treble damages as allowed by statute and any other relief this Honorable Court deems appropriate.

## COUNT II
## DISCRIMINATION IN VIOLATION OF 29 U.S.C. § 2614(a)(1)

46. Plaintiff incorporates by reference paragraphs 1 through 45 of the Complaint as though fully set forth herein.

47. Corewell Health was Plaintiff's "employer" within the meaning of the 29 U.S.C. § 2614(a)(1).

48. "Employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions", including termination.

49. Plaintiff engaged in activity protected by the FMLA when he requested and was given the impression he was approved for FMLA leave.

50. The FMLA leaves were approved by Defendants.

51. Defendants took adverse action against Plaintiff by terminating him after he returned from FMLA leave.

52. As a result of Plaintiff asserting his right to a FMLA leave, she was subjected to adverse employment action including termination.

53. As a direct and proximate result, Plaintiff has sustained damages including, but not limited to the following:

   a. Loss of income;

   b. Loss of fringe benefits;

   c. Emotional pain and suffering;

   d. Severe mental anguish and distress;

   e. Embarrassment and humiliation;

   f. Fright, shock, and mortification;

   g. Loss of earnings and other employment benefits; and

   h. Costs and attorney fees.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendants in an amount in excess of $75,000.00, plus exemplary/treble damages, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

## COUNT III
## RACIAL DISCRIMINATION AND HARASSMENT

54. Plaintiff incorporates by reference paragraphs 1 through 53 of the Complaint as though fully set forth herein.

55. Plaintiff belongs to a protected class as an African American.

8

56. Plaintiff was subjected to unwelcome communication and conduct due to her race .

57. The racially charged conduct towards Plaintiff was unwelcome.

58. Defendant's conduct was intentional and motivated by Plaintiff's race as an African-American.

59. The conduct was so severe and/or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile and/or abusive.

60. Plaintiff believed her work environment to hostile and abusive as a direct result of Defendant's conduct.

61. Plaintiff suffered adverse tangible employment actions as a result of the hostile work environment and was terminated due to her race.

62. Defendant overly scrutinized Plaintiff's work due to her race and created performance issues where no performance issues existed due to Plaintiff's race.

63. The ongoing and continuing unwelcome conduct and communication was intended to and did substantially interfere with Plaintiff's employment and/or created an intimidating, hostile, or offensive work environment for Plaintiff and Plaintiff was ultimately suspended due to her race.

64. Pursuant to 42 U.S.C. §1981 and the ELCRA Plaintiff was guaranteed the right to be free from discriminatory treatment and harassment and/or retaliation, including suspension from his employer and/or supervisors based upon her race .

65. Plaintiff's race was a factor in Defendant's decisions, actions, treatment, conduct and attitude towards Plaintiff.

66. Plaintiff was subjected to repeated and continuous discriminatory treatment, up to and including adverse employment actions, including termination, based upon her race by Defendant, to the point where her status as an employee has been detrimentally affected by Defendant and Plaintiff has been subjected to work in a hostile work environment.

67. Plaintiff is entitled to punitive, exemplary and compensatory damages pursuant to 42 U.S.C. §1981, and exemplary and compensatory damages under the ELCRA as a result of each and every violation of the act, including costs and reasonable attorneys' fees.

68. Because of the unlawful conduct of Defendant, their agents, representatives and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of

earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest, and attorney fees and any other relief this Honorable Court deems appropriate and just.

## COUNT IV
## RETALIATION

69. Plaintiff incorporates by reference paragraphs 1 through 68 of the Complaint as though fully set forth herein.

70. Pursuant to 42 U.S.C. 1981 and the Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*, Plaintiff is guaranteed the right to be free from discrimination from her employer and/or supervisors based upon her race.

71. Plaintiff's race were factors in Defendant's employment decisions.

72. Defendant was Plaintiff's employer within the meaning of 42 U.S.C. 1981 and the Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*.

73. During the course of her employment with Defendant, Plaintiff was subjected to constant unwelcome discrimination and harassment regarding her race creating a hostile work environment by Defendant.

74. The race discrimination created a hostile work environment and had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

75. Plaintiff complained to upper management of Defendant that she was being discriminated against due to her race and that she was being subjected to a hostile work environment.

76. Defendant had actual and constructive notice that it was creating an intimidating, hostile and offensive work environment for Plaintiff.

77. After having notice of the race discrimination and conduct toward Plaintiff, Defendant took spoke to Plaintiff's supervisor who was harassing and discriminating against her due to her race and while the Supervisor stopped making racial based comments, she began retaliating against Plaintiff by falsely creating performance issues and taking adverse employment action against Plaintiff based upon her race and in retaliation for her complaints of harassment and discrimination.

78. The race discrimination and conduct by Defendant and Defendant's retaliation violate 42 U.S.C. 1981 and the Michigan Elliott- Larsen Civil Rights Act, MCL 37.2101 *et seq*.

79. As a proximate result of the Defendant's retaliation of Plaintiff, Plaintiff has sustained injuries including, but not limited to, physical pain and

suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, outrage, anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate and just.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/Scott P. Batey
    SCOTT P. BATEY (P54711)
    Attorney for Plaintiff
    30200 Telegraph Road, Suite 400
    Bingham Farms, Michigan 48025
    (248) 540-6800-telephone
    (248) 940-5848-fax
    sbatey@bateylaw.com

Dated: February 25, 2025

## **DEMAND FOR JURY TRIAL**

NOW COMES, Plaintiff, Brittney Alexander, by and through her attorney's, Scott P. Batey and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all issues allowed by law.

        Respectfully submitted,

        **BATEY LAW FIRM, PLLC**

        By: /s/Scott P. Batey
           SCOTT P. BATEY (P54711)
           Attorney for Plaintiff
           30200 Telegraph Road, Suite 400
           Bingham Farms, Michigan 48025
           (248) 540-6800-telephone
           (248) 940-5848-fax
           sbatey@bateylaw.com

Dated:  February 25, 2025